**Wayne W. LIVESAY, Appellant,**

v.

**Anthony J. PRINCIPI, Secretary of Veterans Affairs, Appellee.**

**No. 00–51.**

United States Court of Appeals for Veterans Claims.

Argued July 23, 2001.

Decided Aug. 30, 2001.

Wayne W. Livesay, pro se.

Patricia Trujillo, with whom Leigh A. Bradley, General Counsel; Ron Garvin, Assistant General Counsel; and Joan E.

Moriarty, Deputy Assistant General Counsel, were on the brief, all of Washington, DC, for the appellee.

Robert V. Chisholm, of Providence, Rhode Island, for the National Organization of Veterans' Advocates as amicus curiae.

Before KRAMER, Chief Judge, and FARLEY, HOLDAWAY, IVERS, STEINBERG, and GREENE, Judges.

FARLEY, Judge, filed the opinion of the Court. KRAMER, Chief Judge, with whom STEINBERG, Judge, joined, filed a dissenting opinion.

FARLEY, Judge:

The appellant appeals two decisions of the Board of Veterans' Appeals (BVA or Board) dated December 23, 1999. In the first decision (Decision 1), the Board denied the appellant's claim for an effective date earlier than January 2, 1997, for his service-connected disorder of the larynx, including laryngeal carcinoma. In the second decision (Decision 2), the Board found that neither the December 1985 BVA decision denying the appellant's claim for service connection for a chronic disorder of the larynx nor the Board's November 1987 decision denying his claim on reconsideration was the product of clear and unmistakable error (CUE). This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will vacate and remand Decision 1 and affirm Decision 2.

## I. BACKGROUND

The veteran served on active duty from February 1943 to November 1945 and from June 1953 to January 1955. Record (R.) at 28, 31. In April 1947, the veteran was awarded service connection for residuals of pneumonia and pleurisy. R. at 214. The regional office (RO) also granted service connection for psychoneurosis, anxiety reaction in July 1947. R. at 229–30. In September 1965, the RO denied the veteran's claim for service connection for laryngitis. R. at 293.

In March 1982, the veteran sought to reopen his claim for laryngitis. R. at 295. The veteran claimed that he developed laryngitis, pneumonia, and severe malnutrition as a prisoner of war (POW), and that the combination of these conditions led to his carcinoma. *Id.* He submitted private medical records that reflected that he underwent a direct laryngoscopy for a carcinoma of the vocal cord in April 1977. R. at 298. A VA examination dated in May 1982 lists diagnoses of anxiety neurosis with depressive features, nephrolithiasis, benign prostatic hypertrophy, and bilateral pleural thickening. R. at 313–15.

In September 1982, the RO denied service connection for postoperative laryngectomy as residuals of laryngitis and malnutrition secondary to POW status. R. at 330–31. In December 1982, the veteran provided sworn testimony at a personal hearing. R. at 339–47. He submitted medical records that established treatment for renal colic, leukoplakia and chronic inflammation of the larynx and true vocal cords, and hoarseness for one year. R. at 350–61, 363–66, 369, 374–75, 380–87, 392–406, 408–15, 417–24, 426–34. VA treatment records dated in August 1947 contain diagnoses of chronic pleurisy, residuals of pneumonia, hysteria, and foreign body reaction of the left hand. R. at 465. In April 1983, the RO granted service connection for malnutrition, rated at 0% disabling, but denied service connection for total laryngectomy, secondary to carcinoma of the larynx and chronic laryngitis. R. at 473–75.

In December 1983, the veteran provided sworn testimony at a hearing before the Board. R. at 494–516. He submitted ad-

ditional medical records of treatment for cancer of the larynx. R. at 518–22. In March 1984, the BVA remanded the matter. R. at 524–26. VA received surgical pathology slides that indicated carcinoma of the true vocal cord, left. R. at 529–37. In December 1984, the veteran provided sworn testimony in a hearing at the RO. R. at 553–60. At the hearing, the veteran stated that although no one could ever say with authority exactly what caused his cancer, 80% to 90% of all carcinomas are caused by either a chemical reaction, a viral infection, or a nutritional imbalance. R. at 556. He also expressed his personal view that "[p]ractically all POW's suffered from some degree of malnutrition, gastritis, dysentery, respiratory disease, skin disease, arthritis, frostbite, exposure[,] and nervous condition," and that "[e]very POW should automatically be service connected for these ailments and any ailments related to them." R. at 557. The veteran concluded that because he believes his chronic disorder of the larynx and cancer were caused by malnutrition, he should be awarded service connection for those conditions. R. at 553–60.

In July 1985, a physician from the Armed Forces Institute of Pathology opined that the veteran's laryngeal malignancy had its origin within two years prior to his positive biopsy material from the larynx obtained in October 1966. R. at 584–85. In December 1985, the Board denied service connection for a chronic disability of the larynx. R. at 609–20. The Board found that the veteran's laryngeal carcinoma was first manifested to a compensable degree many years after his separation from service and that this disability, including laryngeal carcinoma, was not shown to be causally related to a disease or injury of service origin. R. at 620. The Board noted that because the veteran's condition was not one of the conditions afforded presumptive service connection

in, or otherwise encompassed by, Public Law 97–37, that law was not applicable to the veteran's claim. R. at 618.

In April 1986, the veteran provided sworn testimony at a hearing before the RO. R. at 622–33. In July 1986, the RO determined that new and material evidence had not been submitted to reopen the claim. R. at 635. In December 1986, the veteran provided sworn testimony in a hearing before the Board. R. at 658–73. In November 1987, the Board reconsidered its December 1985 decision and concluded that it contained no obvious error. R. at 696–97.

In 1989, the veteran submitted a letter to this Court, copied to VA, in an attempt to appeal this matter to this Court. R. at 705–06. The veteran was advised that the Court did not have jurisdiction to review his claim. R. at 709. Thereafter, the veteran continued to submit numerous letters to VA expressing his disagreement with the denial of his claim and seeking a proper hearing on his claim based upon Public Law 97–37.

In January 1997, the RO advised the veteran that a VA General Counsel opinion provided for the possibility of service connection secondary to smoking and that his condition might be related to smoking during service. R. at 828. In his response, the veteran stated that although he had never claimed that smoking was a contributing factor to his problems he realized it could have been; he also stated that he continued to believe that the primary cause of his condition was malnutrition. R. at 846. The veteran was given a VA POW protocol examination in December 1997. R. at 849–53. The examiner opined that it was more likely than not that malnutrition and smoking were the positive agents for the veteran's laryngeal cancer. R. at 852. In March 1998, the RO granted

service connection for cancer of the larynx, status post laryngectomy with a 100% evaluation, effective January 2, 1997. In April 1998, the veteran filed a Notice of Disagreement with that decision. R. at 878. He argued that the effective date of his award should be in 1982, when he originally filed a claim under Public Law 97–37. In October 1998, the appellant provided sworn testimony in a hearing before the Board. R. at 928–38. In the two BVA decisions here on appeal, the Board found that an effective date prior to January 2, 1997, was not warranted on a direct basis, or on the basis of CUE in the 1985 or 1987 BVA decisions. R. at 1–26.

## II. ANALYSIS

### A. Decision 1: Earlier Effective Date

■ Section 5110(a) of 38 U.S.C. provides:

Unless specifically provided otherwise in this chapter, the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

See also Crawford v. Brown, 5 Vet.App. 33, 35 (1993). The effective date of a successful claim to reopen is the date of receipt of the claim to reopen or the date entitlement arose, whichever is later. See 38 C.F.R. § 3.400; Spencer v. Brown, 4 Vet.App. 283, 293 (1993), aff'd, 17 F.3d 368 (Fed.Cir.1994), cert. denied, 513 U.S. 810, 115 S.Ct. 61, 130 L.Ed.2d 19 (1994); Flash v. Brown, 8 Vet.App. 332, 340 (1995). When a claim is denied as a result of "initial review or determination," and the claimant fails to timely appeal that decision by filing a Notice of Disagreement within the one-year period prescribed in 38

U.S.C. § 7105(b)(1), that decision becomes final and the claim may not thereafter be reopened or allowed, except upon the submission of "new and material evidence." 38 U.S.C. §§ 7104(b), 7105(c); see also Person v. Brown, 5 Vet.App. 449, 450 (1993) (failure to timely appeal an RO decision within one-year period renders the decision final); Spencer, 4 Vet.App. at 286–87. The Court reviews the issue of an earlier effective date under the "clearly erroneous" standard of review. Hanson v. Brown, 9 Vet.App. 29, 32 (1996); Scott v. Brown, 7 Vet.App. 184 (1994); Quarles v. Derwinski, 3 Vet.App. 129 (1992); Gilbert v. Derwinski, 1 Vet.App. 49 (1990).

■ The appellant's award of service connection for a throat condition, and the effective date of that award, was based upon a reopening of his 1982 claim that became final with the Board's 1987 decision on reconsideration. The Board noted that the appellant had submitted several letters to VA between 1987 and 1997, but that none of those communications could reasonably be construed as expressing an intent to reopen his claim. However, a review of the record reveals that all of the communication from the appellant to VA subsequent to the 1987 Board decision expressed his disagreement with the decision. In a 1989 letter to this Court, which was also sent to VA, the appellant specifically asked how he should proceed to obtain an objective hearing on his claim pursuant to Public Law 97–37. See R. at 705–06. The Board's decision does not specifically address this letter, or any of the other letters sent by the appellant during that 10 year period, and fails to provide an adequate statement of its reasons and bases for not construing these communications as an attempt to reopen his claim. See 38 U.S.C. § 7104(d) (Board is required to provide a "written statement of the Board's findings and conclusions, and the

reasons or bases for those findings and conclusions"); *see also e.g., Buckley v. West,* 12 Vet.App. 76, 84 (1998); *Allday v. Brown,* 7 Vet.App. 517, 527 (1995); *Gilbert, supra.* Accordingly, a remand is required. *Gilbert,* 1 Vet.App. at 59. *See also Peyton v. Derwinski,* 1 Vet.App. 282, 285 (1991); *Smith v. Derwinski,* 1 Vet. App. 235, 237 (1991); *Hatlestad v. Derwinski,* 1 Vet.App. 164, 169–70 (1991); *Ohland v. Derwinski,* 1 Vet.App. 147, 149 (1991) ("The BVA decision here includes neither an analysis of the credibility or probative value of the evidence submitted by or on behalf of the veteran in support of his claim nor any explanation of the Board's conclusion. . . .").

## 1.

During the course of this appeal, the National Organization of Veterans Advocates (NOVA) filed a motion for leave to file an amicus brief. By order dated April 19, 2001, the Court granted NOVA's motion and ordered the Secretary to file supplemental briefing regarding the impact, if any, of the Veterans Claims Assistance Act of 2000 (VCAA), Pub.L. No. 106–475, 114 Stat. 2096 (Nov. 9, 2000) on Mr. Livesay's claims. The appellant and amicus were given the opportunity to respond to the Secretary's supplemental brief. NOVA filed a brief addressing not only the VCAA, but advancing additional arguments relating to the merits of the appellant's claims. Annexed to NOVA's brief was a statement by the appellant expressly adopting the arguments presented by the amicus as his own. Brief of Amicus Curiae, Appendix A.

In support of the appellant's claim for an earlier effective date, amicus argues on his behalf that 38 C.F.R. § 3.400(q) is inconsistent with 38 U.S.C. § 5110(a) and therefore should be declared invalid. As noted above, § 5110(a) provides that "the effective date of an award based upon an original claim, a claim reopened after final adjudication, or a claim for increase of compensation . . . shall be fixed in accordance with the facts found, but shall not be earlier than the date of application therefor." Section 3.400(q)(ii) of title 38 of the Code of Federal Regulations specifically provides that the effective date of an award based upon new and material evidence received after a final disallowance of the original claim is the "date of receipt of the new claim or [the] date entitlement arose, whichever is later." Amicus argues that the phrase "application therefor" in § 5110(a) applies only to the filing of an application for an "original claim" (because, NOVA argues, a formal "application" is required to be filed only when filing an "original claim"). Therefore, in the view of NOVA, the effective date of claims "reopened after final adjudication" or "for increase of compensation . . . shall be fixed in accordance with the facts found," and is not subject to the qualifying language "but shall not be earlier than the date of application therefor." We disagree.

"The starting point in interpreting a statute is its language, for 'if the intent of Congress is clear, that is the end of the matter.'" *Lewis v. Brown,* 8 Vet. App. 287, 290 (1995) (quoting *Gardner v. Brown,* 5 F.3d 1456, 1458 (Fed.Cir.1993), *aff'd,* 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994)). "Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute." *Gardner,* 1 Vet. App. at 586 (citing *Bethesda Hospital Ass'n. v. Bowen,* 485 U.S. 399, 403–05, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988)). This Court examined the specific language of 38 U.S.C. § 5110 in *Wright v. Gober,* and found that "the phrase 'application therefor' means the application which resulted

in the award of disability compensation that is to be assigned an effective date under section 5110." 10 Vet.App. 343, 346–47 (1997) ("the word therefor ... mean[s] the thing previously discussed, understood, or under discussion"). Amicus offers no authority for its illogical position that the term "therefor" in this statute should be limited to only *one* of the things "previously discussed, understood, or under discussion." NOVA's offered interpretation is even more tortured by the fact that they propose that "therefor" must refer only to the *first* of three things previously discussed. Moreover, the language of subsection (b)(2) of § 5110 directly contradicts amicus' reading of the statute. Subsection (b)(2) provides that the effective date of an award for an increased rating can be up to one year prior to the receipt of an "application" for an increased rating. Clearly § 5110 contemplates the existence of an "application" for claims other than an original claim (i.e., a claim for an increased rating or a reopened claim). Accordingly, we find that the plain meaning of § 5110 to be, as we found in *Wright, supra,* that "the phrase 'application therefor' means the application which resulted in the award of disability compensation that is to be assigned an effective date under section 5110." 10 Vet.App. at 346; *see also Cook v. Principi,* 258 F.3d 1311 (Fed.Cir.2001) (affirming assignment of an effective date for a service-connection award based upon a reopened claim as the date on which the appellant "first sought to reopen his claim"). Thus, we find that the Secretary's regulation, § 3.400(q), is entirely consistent with the statute.

 Even if we were to discern any type of ambiguity in the language of the statute, we find that the Secretary's interpretation of the statute, as expressed in the regulation, is reasonable. The Secre-

tary of Veterans Affairs has authority under 38 U.S.C. § 501(a) to "prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws." Determining whether 38 C.F.R. § 3.400 violates the Secretary's statutory authority requires examining the language of the statute and the interpretation adopted by the Secretary. *See Gardner,* 1 Vet.App. at 586–87. When Congress creates room for agency interpretation or expressly delegates policy making authority to the Secretary, the scope of judicial review is limited. *Pauley v. BethEnergy Mines,* 501 U.S. 680, 696, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991). The Court will sustain a regulation that is consistent with the language of the statute and is a plausible or reasonable interpretation of the law. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Rust v. Sullivan,* 500 U.S. 173, 184, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991); *but see U.S. v. Mead Corp.,* 533 U.S. 218, 121 S.Ct. 2164, 2170–71, 150 L.Ed.2d 292 (June 18, 2001) (*Chevron* deference only available when "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law" and "the agency interpretation claiming deference was promulgated in the exercise of that authority."). Substantial deference is given to the statutory interpretation of the agency authorized to administer the statute. *Chevron,* 467 U.S. at 844, 104 S.Ct. 2778; *Rust,* 500 U.S. at 184, 111 S.Ct. 1759; *see Tallman v. Brown,* 7 Vet.App. 453, 463–65 (1995). Although we find no ambiguity in the plain language of 38 U.S.C. § 5110, even if such ambiguity exists, we find the Secretary's interpretation, as expressed in 38 C.F.R. § 3.400(q) to be "consistent with the language of the statute and ... a ... reason-

able interpretation of the law." *Chevron, supra.*

2.

Amicus also argues that the appellant might be entitled to an earlier effective date based upon what NOVA alleges to be a "grave procedural error" in the adjudication of Mr. Livesay's 1982 claim. Because the appellant alleged in his 1982 claim that his laryngeal cancer was a result of his POW status, amicus believes that the RO was required, pursuant to 38 C.F.R. § 3.326(b), to provide the appellant with a medical examination that discussed the etiology of his condition and that this failure amounted to the type of "grave procedural error" described by U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Hayre v. West,* 188 F.3d 1327 (Fed.Cir.1999) (VA's failure to obtain service medical records specifically requested by a claimant without providing him notice explaining the deficiency is a procedural error of such gravity that would vitiate the finality of an RO decision). Because this argument has been raised for the first time here on appeal, and the appellant's claim must be remanded for other reasons, the Court declines to consider this argument at this time. *See Maggitt v. West,* 202 F.3d 1370, 1378 (Fed.Cir.2000) ("Whether the doctrine of administrative exhaustion should be invoked ... entails a case-by-case analysis of the competing individual and institutional interests, including whether the [U.S. Court of Appeals for Veterans Claims] should use its authority to 'remand the matter, as appropriate' to the Board."). The Court notes, however, that the Federal Circuit has recently cautioned that "*Hayre* was an extremely narrow decision" and that "[a]lthough the opinion contained some broad language, the holding was limited." *See Cook, supra* (declining to extend *Hayre's* "restricted ruling to cover an asserted breach of the

duty [to assist] where [the appellant alleges] the medical examination he received was ... inadequate."). The appellant is free to proffer his arguments to the Board on remand for consideration by the agency in the first instance. *See Kutscherousky v. West,* 12 Vet.App. 369, 372 (1999) (per curiam order) (on remand, appellant free to submit additional evidence and argument); *Quarles,* 3 Vet.App. at 141 (on remand, Board must consider additional evidence and argument in assessing entitlement to benefit sought).

### B. Decision 2: Clear and Unmistakable Error

 Section 3.105(a) of title 38, Code of Federal Regulations, provides in pertinent part that "[p]revious determinations which are final and binding ... will be accepted as correct in the absence of [CUE]. Where evidence establishes such error, the prior decision will be reversed or amended." *See also* 38 U.S.C. § 5109A. In *Russell v. Principi,* the Court defined CUE as follows:

> Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied.... [CUE] is the sort of error which, had it not been made, would have manifestly changed the outcome ... [, an error that is] undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed.

3 Vet.App. 310, 313 (1992) (en banc). "In order for there to be a valid claim of [CUE], ... [t]he claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated." *Crippen v. Brown,* 9 Vet.App. 412, 418 (1996) (quoting *Russell,* 3 Vet.App. at 313). The claimant must provide some degree of

specificity as to what the alleged error is, and, unless it is the kind of error that, if true, would be CUE on its face, "persuasive reasons must be given as to why the result would have been *manifestly* different but for the alleged error." *Fugo v. Brown,* 6 Vet.App. 40, 44 (1993); *see also Bustos v. West,* 179 F.3d 1378, 1380–81 (Fed.Cir.1999) (adopting this Court's interpretation of 38 C.F.R. § 3.105). The Court's review of BVA decisions as. to CUE in prior decisions is limited to whether the BVA's conclusion was "arbitrary, capricious, an abuse of discretion, or not in accordance with the law," and whether the decision is supported by an adequate statement of reasons or bases. *See Russell,* 3 Vet.App. at 315; *see also* 38 U.S.C. §§ 7261(a)(3)(A), 7104(d)(1).

 The two BVA decisions the appellant has alleged are the product of CUE denied his claim for service connection because he had presented no evidence that his chronic disorder of the larynx and cancer of the larynx were related to his service-connected malnutrition. Although the appellant correctly asserted throughout his claim that Public Law 97–37 (codified at 38 U.S.C. § 1112(b), previously codified at 38 U.S.C. § 312) provided for presumptive service connection for his claim for residuals of malnutrition, he continually failed to recognize that he was still required to present evidence that his cancer of the larynx was related to malnutrition. The relationship between malnutrition and cancer is a determination requiring medical expertise and the appellant's opinion, as a lay person, was insufficient to establish that fact. *Espiritu v. Derwinski,* 2 Vet. App. 492, 494 (1992). Medical evidence of a relationship between the veteran's malnutrition and his cancer was not made a part of the record until December 1997 when the veteran was given a VA POW protocol examination. *See* R. at 852 ("The etiology of the cancer of the larynx is likely to be moderated by [the veteran's] severe malnutrition and starvation while in the service.").

The appellant's contention that the 1985 and 1987 BVA decisions were the product of CUE is based upon his belief that his condition in 1982, when he first submitted his claim to reopen, was the same as it was in January 1997, the effective date of his service connection award. It may very well be true that the veteran was just as disabled in 1982; however, the evidence necessary to support his claim was not of record at that time. Because the appellant's 1998 award of service connection (made effective as of January 1997) was based upon evidence that did not become part of the record until after January 1997, the Board found that the appellant's argument that his condition was the same in 1982 was insufficient to establish CUE.

The appellant also argued that the 1985 and 1987 decisions were the product of CUE because VA failed to examine his throat when he was hospitalized by VA within two years of his separation from service. The Board found that this was essentially an argument that VA failed to fulfill its duty to assist, but that the veteran had no claim pending at the time of his hospitalization that would have triggered VA's duty to assist. The Board also noted that a purported failure by VA to fulfill its duty to assist does not constitute CUE. The Board pointed out that the veteran was given an examination at the time, but that the examination reports do not indicate that the veteran had complained of a throat condition.

The appellant also argued that the Board did not consider or properly apply Public Law 97–37 in its 1985 and 1987 decisions. R. at 10. The Board found that because the 1985 BVA decision expressly considered Public Law 97–37, but deter-

mined that it was not applicable to the appellant's throat condition claim, the appellant's argument failed on its face. Finally, the Board concluded that since the 1987 BVA decision reviewed the 1985 BVA decision for "obvious error" and because "[a] CUE claim and an obvious error claim are essentially equivalent" (*Hazan v. Gober*, 10 Vet.App. 511, 522 (1997)), the 1987 Board decision, as a matter of law, could not have been the product of CUE. R. at 11–12.

The Court finds that the Board's decision is adequately supported by the record and cannot be said to be "arbitrary, capricious, an abuse of discretion, or not in accordance with the law." *See Russell, supra.* The appellant presented no evidence or argument to the Board or to this Court that either the correct facts, *as they were known at the time of the 1985 and 1987 BVA decisions,* were not before the Board, or that the statutory or regulatory provisions extant at the time were incorrectly applied. *Id.* As noted above, evidence that the veteran's throat condition was related to malnutrition was not before the Board in 1985 or 1987; thus, it cannot be said that the Board's failure to award service connection based upon Public Law 97–37 was clearly and unmistakably erroneous.

### 1.

The Court notes that the Board cited to 38 C.F.R. § 20.1409(c) in denying the appellant's CUE motions with respect to both the 1985 and 1987 BVA decisions. Section 20.1404(b), title 38, Code of Federal Regulations requires that a CUE motion set forth clearly and specifically the alleged clear and unmistakable error. At the time the BVA decisions on appeal were issued, that regulation also provided that "[m]otions which fail to comply with the requirements set forth in this paragraph shall be denied." 38 C.F.R. § 20.1404(b)

(1999). Section 20.1409(c) provided that "[o]nce there is a final decision on a motion under this subpart relating to a prior Board decision on an issue, that prior Board decision on that issue is no longer subject to revision on the grounds of [CUE]." 38 C.F.R. § 20.1409(c) (1999). In *Disabled American Veterans (DAV) v. Gober,* 234 F.3d 682 (Fed.Cir.2000), the Federal Circuit held that § 20.1404(b), in the manner that it operates with § 20.1409(c), is invalid because it was contradictory with the requirement that the Board decide a CUE motion on the merits. The Federal Circuit found that under the old regulations, if the Board denied a veteran's CUE motion because it failed to meet the specific pleading requirements of 38 C.F.R. § 20.1404(b) and *Russell, supra,* that veteran might be precluded by 38 C.F.R. § 20.1409(c) from filing a new, properly pled CUE motion as to the same decision. To the extent the regulations did so, the Federal Circuit found them to be invalid. 234 F.3d at 698. In response, the Secretary has proposed revised regulations and enacted an interim rule that states that motions that fail under 38 C.F.R. § 20.1404(b) and *Russell,* shall now be "dismissed without prejudice to refiling under this subpart." 66 F.R. 35902 (July 10, 2001). New § 20.1409(b) provides that a dismissal without prejudice is not a final decision of the Board. *Id.*

In the BVA decision denying Mr. Livesay's CUE motion, the Board stated that the veteran had "not presented a viable claim of CUE in the December 1985 Board decision" and that "the 1987 Board decision cannot as a matter of law have contained CUE." The Board then "denied" the motion and, citing to 38 C.F.R. § 20.1409(c), stated that those decisions were "final." Although the Board did use language indicating that Mr. Livesay's motion was being denied pursuant to 38

C.F.R. § 20.1404(b), we find that the substance of the Board's decision does in fact address the merits of his CUE motion. *See Johnston v. West,* 11 Vet.App. 240, 241–42 (1998). Accordingly, we hold that the Board properly denied the appellant's motion.

### 2.

■ Amicus argues on the appellant's behalf that VA's failure to provide the appellant with a "comprehensive examination to ascertain the etiology of his condition" in 1982 when he first filed a claim based upon his POW status, in addition to being a "grave procedural error" (*see discussion supra*) also amounted to CUE. Brief of Amicus Curiae at 21. At the outset, the Court notes reservations about the propriety of considering this new specific allegation of CUE advanced at this stage of the litigation not by the appellant, but by amicus. *See Maggitt,* 202 F.3d at 1377 ("While the [U.S. Court of Appeals for Veterans Claims] may hear legal arguments raised for the first time with regard to a claim that is properly before the court, it is not compelled to do so in every instance."); *Fugo,* 6 Vet.App. at 44 ("If a claimant-appellant wishes to reasonably raise CUE there must be some degree of specificity as to what the alleged error is."). However, even assuming it is proper to consider this argument belatedly raised by amicus, we find it to be without merit.

Amicus argues that the RO was required, pursuant to 38 C.F.R. § 3.326(b), to provide the appellant with a medical examination that discussed the etiology of his condition. Section 3.326(b) provides, in pertinent part, that "monetary benefits to a former prisoner of war will not be denied unless the claimant has been offered a complete physical examination." Neither that regulation nor the manual provision cited by amicus require that a physical examination given pursuant to 38 C.F.R.

§ 3.326(b) must include an opinion as to the etiology of the POW's condition, and amicus has cited no authority demonstrating what a "complete physical examination" must include. In any event, the Court acknowledges that special consideration must be given to claims based upon a veteran's POW status. *See, e.g.,* 38 C.F.R. § 3.304(e). However, even if we were to accept amicus' argument that § 3.326(b) does require that a POW examination include an opinion as to etiology, the appellant (or amicus) has not demonstrated that the examination was, in fact, inadequate or that but for VA's alleged failure to provide such an examination, the result would have been "*manifestly* different," which is essential for a successful allegation of CUE. *Fugo,* 6 Vet.App. at 44.

In June 1982, the appellant underwent a VA medical examination at the VA Medical Center in Long Beach, California. R. at 312–25. An ear, nose, and throat consultation report noted that the appellant had undergone a laryngoscopy in 1977 with radical neck dissection and reconstructive work for natural speech. The physician noted that the appellant had excellent speech and that his mouth and neck were free of tumors. R. at 312. A pulmonary examination and chest x-ray were also performed because the appellant had complained of shortness of breath upon exertion since his 1977 surgery. R. at 315–17, 321. In June 1985, after additional private medical records regarding the appellant's throat condition and laryngeal carcinoma were obtained, the BVA requested an opinion from the Armed Forces Institute of Pathology (AFIP) "as to the time of onset or probable duration of the [appellant's] malignancy or malignancies." R. at 580–81. The AFIP reviewed the appellant's claims folder, including private and VA medical records, as well as related histology tissue slides revealing his carci-

noma, non-malignant histologies, and scarring of the larynx. R. at 584. The AFIP estimated that Mr. Livesay's "laryngeal malignancy had its origin within two years of the positive biopsy material from the larynx obtained in October 1966." R. at 585. This opinion, together with the 1982 VA compensation and pension examination given to the appellant appears to have fulfilled any duty VA may have had pursuant to 38 C.F.R. § 3.326(b) with respect to his 1982 claim.

The December 1997 VA examination report that resulted in Mr. Livesay's service-connection award opined that not only malnutrition, but smoking as well, were "positive agents" for the veteran's cancer. R. at 852. No allegation as to whether smoking was a factor in the development of the veteran's cancer was made or considered prior to 1997. Accordingly, the appellant cannot demonstrate that had he received what NOVA would accept as an adequate examination in 1982 the outcome would have been different. *See Fugo, supra; see also Cook, supra* (to establish CUE, it is incumbent on the veteran to establish entitlement to benefits as of the date of the claim being challenged as CUE); *Bustos v. West,* 179 F.3d at 1381, *cert. denied,* 528 U.S. 967, 120 S.Ct. 405, 145 L.Ed.2d 315 (1999) (a veteran "must show that an outcome-determinative error occurred").

Based upon the foregoing, the Court finds that there was no clear and unmistakable error in either the 1985 or the 1987 BVA decisions. Accordingly, Decision 2 is affirmed.

### 3.

■ At oral argument, a question was raised as to whether the appellant's CUE motion was inextricably intertwined with his earlier effective date claim such that the CUE motion should be remanded simply because the earlier effective date claim is being remanded. In *Smith v. Gober,*

the Federal Circuit held that the underlying facts of the appellant's claim to reopen based upon new and material evidence and his CUE motion regarding the same disability were "so intimately connected ... that, in the interests of judicial economy and avoidance of piecemeal litigation, they should be appealed together." 236 F.3d 1370, 1372 (Fed.Cir.2001). The Federal Circuit therefore concluded that this Court's affirmance of the Board's denial of his CUE motion would not become final for purposes of appeal until the Court's remand of his new and material evidence claim was final and dismissed his appeal without prejudice. *Id.* at 1372. We have considered *Smith* and hold that it neither requires nor permits a remand of the appellant's allegations of CUE.

The Federal Circuit's opinion in *Smith* noted that an analysis of the appellant's new and material evidence claim and the CUE matter in that case would involve a careful evaluation of the evidence of record at the time of the decision being challenged as CUE to determine whether that decision was the product of CUE based upon the evidence of record at the time and to determine if the evidence submitted since that time was "new and material." In contrast, this matter is factually similar to the Federal Circuit's earlier opinion in *Hayre, supra,* in which the court affirmed this Court's affirmance of the Board's denial of the appellant's CUE motion, yet remanded his earlier effective date claim. Mr. Livesay's earlier effective date claim is not dependent upon evidence of record at the time of the 1985 and 1987 BVA decisions. Rather, the only critical evidence will be the submissions the appellant made subsequent to those decisions. Thus, we conclude that these CUE matters are not inextricably intertwined with Mr. Livesay's earlier effective date claim and therefore need not be remanded. *See Hayre, supra.*

#### 4. The Veterans Claims Assistance Act of 2000

■ The VCAA was enacted on November 9, 2000. Among other things, the VCAA eliminated the well-grounded-claim requirement and modified the Secretary's duties to notify and assist claimants. *See generally* VCAA, §§ 3, 4, 7; *see also Holliday v. Principi*, 14 Vet.App. 280, 284–86 (2001) (holding all sections of VCAA are retroactive). In *Karnas v. Derwinski*, 1 Vet.App. 308, 312–13 (1991), this Court held that where a statute or regulation changes during the appellate process, the version most favorable to the claimant shall apply. It is not the function of this Court to determine in the first instance which version of the law is most favorable to the claimant. *See Baker v. West*, 11 Vet.App. 163 (1998); *Dudnick v. Brown*, 10 Vet.App. 79 (1997).

■ The VCAA is a reason to remand many, many claims, but it is not an excuse to remand all claims. In *Holliday, supra,* this Court held that "all provisions of the VCAA are potentially applicable to claims pending on the date of the VCAA's enactment" and that "this Court may not determine in the first instance the specific applicability of the VCAA." 14 Vet.App. at 286, 290. However, the Court also stated that we "cannot" "determine in the first instance who's in and who's out under the … VCAA." *Id.* at 290. The quoted language in *Holliday* was not intended to stand for the proposition that the VCAA requires remand of all pending claims and that this Court may not decide that the VCAA could not affect a pending matter. In *Smith v. Gober*, 14 Vet.App. 227, 231–32 (2000), the Court held that the VCAA was not applicable to a matter of statutory interpretation. The VCAA is indeed *potentially* applicable to all pending claims and, where it applies to a particular claim, prudence dictates that the Secretary and not this Court decide in the first instance what impact the VCAA has upon that claim. However, in those cases such as *Smith,* where we conclude that the VCAA can have *no* application as a matter of law, this Court not only may, but must so hold. Although the VCAA, with its expanded duties, is potentially applicable to a great number of claims, we find that the VCAA is not applicable to the appellant's allegations of CUE in the 1985 and 1987 BVA decisions.

■ "CUE claims are not conventional 'appeals,' but rather are requests for revisions of previous decision[s]." *DAV*, 234 F.3d at 694 (citing *Haines v. West*, 154 F.3d 1298, 1300 (Fed.Cir.1998)). The movant bears the burden of presenting to the RO specific allegations of error that would amount to CUE, and that error must be based upon the record as it existed at the time of the decision the claimant is alleging was the product of CUE. *Fugo*, 6 Vet.App. at 43; *see also Pierce v. Principi*, 240 F.3d 1348 (Fed.Cir.2001) (affirming, without mention of the VCAA, this Court's interpretation of 38 U.S.C. § 5109A that CUE must be based upon the evidence of record at the time of the decision).

■ A detailed analysis of the organization of title 38, United States Code, demonstrates that CUE is fundamentally different from any other kind of action in the VA adjudicative process. Title 38 is subdivided into six parts. Part II ("GENERAL BENEFITS") and part III ("READJUSTED AND RELATED BENEFITS") govern the benefits available under the laws administered by the Secretary. CUE is governed by the provisions of part IV ("GENERAL ADMINISTRATIVE PROVISIONS") and part V ("BOARDS, ADMINISTRATIONS, AND SERVICES") of title 38. CUE provides a procedural device that allows for a final RO or Board decision to be reversed or revised. A liti-

gant alleging CUE is not pursuing a claim for benefits pursuant to part II or III, but rather is collaterally attacking a final decision, pursuant to section 5109A of part IV, or section 7111 of part V of title 38. The language of sections 5109A(a) and 7111(a), which governs CUE, explicitly states that if the evidence establishes error, the prior final decision shall be *reversed* or *revised.* While CUE, when demonstrated, may result in reversal or revision of a final decision on a claim for benefits, it is not by itself a claim for benefits under part II or III of title 38.

Section 2 of the VCAA, titled "Clarification of Definition of 'Claimant' for Purposes of Veterans Claims" adds a new section 5100 to title 31 of the United States Code. New § 5100 defines the term "claimant," for purposes of chapter 51 of title 38, as "any individual applying for, or submitting a claim for, *any benefit* under the laws administered by the Secretary." (Emphasis added). Section 3 of the VCAA reaffirms, clarifies, and arguably expands the Secretary's duties to notify and assist "claimants" in the development of their claims. VCAA § 3 (to be codified at 38 U.S.C. §§ 5102, 5103, and 5103A). However, because a "request[ ] for revision[ ] of [a] previous decision" on the basis of CUE *is not* an "application" or "claim for[ ] any benefit under the laws administered by the Secretary" for purposes of chapter 51 of title 38. *See DAV, supra.* Thus, a "claimant" as defined by 38 U.S.C. § 5100 includes a person applying for or seeking *benefits* under part II or III of title 38, but cannot encompass a person seeking a revision of a final decision based upon CUE pursuant sections 5109A and 7111.

The regulations promulgated by the Secretary regarding allegations of CUE in final BVA decisions further support this distinction. *See generally* 38 C.F.R. §§ 20.1400–20.1411 (enacting Rules 1400–1411 for the Board's adjudication of motions to revise Board decisions on the basis of CUE), *see also DAV, supra* (holding that, with one exception, Rules 1400–1411 are valid). These rules make clear that several of the claimant-friendly provisions of title 38 generally applicable to the adjudication of VA benefits claims do not apply to CUE motions. First, Rule 1402 states that motions filed under that subpart "are not subject to the provisions of part 19 of [title 38] or this part 20 which relate to the processing and disposition of appeals." 38 C.F.R. § 20.1402. The Rules also make clear that "the benefit of the doubt rule" does not apply to the Board's decision on a CUE motion. 38 C.F.R. § 20.1411(a). Board decisions on CUE motions are not subject to reopening on the grounds of new and material evidence. 38 C.F.R. § 20.1411(b). Moreover, the Rules expressly state that "[a] motion under this subpart *is not an application for benefits subject to any duty associated with 38 U.S.C. 5103(a)*" and that "[a] motion under this subpart *is not a claim for benefits subject to the requirements and duties associated with 38 U.S.C. 5107(a)*." 38 C.F.R. § 20.1411(c)–(d). These rules were enacted before the VCAA and apply to 38 U.S.C. §§ 5103 and 5107 as they existed prior to the VCAA. *See DAV*, 234 F.3d at 704 ("a CUE claim is unique and, thus, should not be governed by statutes such as 38 U.S.C. §§ 5103(a) and 5107(a) which apply to regular claims for benefits."). However, there is nothing in the text or the legislative history of VCAA to indicate that VA's duties to assist and notify are now, for the first time, applicable to CUE motions.

### III. CONCLUSION

Upon consideration of the foregoing, the December 23, 1999, decision of the Board of Veterans Appeals denying an effective date earlier than January 2, 1997, for the

appellant's service-connected disorder of the larynx, including laryngeal carcinoma (Decision 1) is VACATED and the claim is REMANDED for readjudication. The December 23, 1999, decision of the Board of Veterans Appeals concluding that neither the December 1985 BVA decision denying the appellant's claim for service connection for a chronic disorder of the larynx nor the Board's November 1987 decision denying his claim on reconsideration were the product of CUE (Decision 2) is AFFIRMED.

On remand, the appellant is free to submit additional evidence and argument necessary to the resolution of his claim, including any argument pertaining to the newly enacted VCAA. *See Kutscherousky, supra.* The Board shall proceed expeditiously. *See* Veterans' Benefits Improvement Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" of claims remanded by the Board or Court); *Drosky v. Brown,* 10 Vet.App. 251 (1997). If the circumstances warrant, the Board is authorized and obligated to remand the claim to the VA RO for further development. *See* 38 C.F.R. § 19.9(a) (2000); *Littke v. Derwinski,* 1 Vet.App. 90 (1990).

KRAMER, Chief Judge, with whom STEINBERG, Judge, joins, dissenting:

For the reasons that follow, we would reverse the December 1999 decision of the Board of Veterans' Appeals (BVA or Board) that denied the appellant's claim for an effective date earlier than January 2, 1997, for his service-connected disorder of the larynx (Decision 1) and would hold that he is entitled to a 1982 effective date and grant thereby the relief sought by the appellant on appeal. We, therefore, respectfully dissent. Moreover, as a consequence of that holding, it would be un-

necessary to address the impact of the Veterans Claims Assistance Act of 2000, Pub.L. No. 106–475, 114 Stat. 2096 (Nov. 9, 2000) (VCAA), on the appellant's claims of clear and unmistakable error (CUE), denied in the December 1999 BVA decision (Decision 2), because those claims, even if successful, could not result in an effective date earlier than 1982. Nevertheless, because the majority has addressed the VCAA with regard to Decision 2 and because we disagree with the majority's decision in that regard, our dissenting views as to that matter are also set forth below.

## I. BACKGROUND

During World War II, the appellant served on active duty (from February 1943 to November 1945) as a B–17 navigator-bombardier. Record (R.) at 28. He flew 29 combat missions and logged 275 combat hours. *Id.* In August 1944, his plane was shot down while he was engaged in high altitude precision bombing; he was captured by the Germans and held for nine months as a prisoner of war (POW). R. at 28; *see also* R. at 31, 313. In November 1945, he received an honorable discharge, with numerous military decorations, including the Distinguished Flying Cross, an Air Medal with 3 Oak Leaf clusters, and a Purple Heart. R. at 28, 31.

After his discharge from service, the appellant filed a claim with VA for service connection for, inter alia, a larynx disorder; that claim was denied by a VA regional office (RO) in 1965. R. at 289–90, 293. In March 1982, he submitted to the RO a letter indicating that he wished to reopen that disallowed claim and asserting, inter alia, that the malnutrition he had experienced as a POW had caused his larynx condition. R. at 295. The following month, he submitted to the RO medical records reflecting that, beginning in 1966,

he had undergone treatment and surgeries for squamous cell carcinoma of the larynx. R. at 298–302. He was later scheduled for a VA compensation and pension examination and, prior to the examination, completed specified sections of a VA Report of Medical Examination For Disability Evaluation, in which he stated that his "sole purpose" for requesting the examination was to establish that his larynx condition was a result of the malnutrition that he experienced as a POW. R. at 308. That VA form contained the following instructions: "Do NOT take to private physician. Your medical exam[ination] will be accomplished in appropriate clinic(s) at this facility." R. at 308. The report from the VA medical examination, which was conducted in June 1982, noted that the appellant had had a laryngectomy in 1977 and that his mouth and neck were free of tumors. R. at 312. The report does not contain an opinion as to the etiology of the appellant's larynx condition. See R. at 308–12. Following that examination, the appellant sent to the RO a June 15, 1982, letter, stating that the examination "was in no way pertinent" to his claim. R. at 304.

The RO (without obtaining a medical opinion as to the etiology of the appellant's condition) issued a decision in September 1982 denying his claim for service connection for a larynx condition. R. at 331. Later that month, the appellant sent to the RO a letter asserting: "[The June 1982 VA medical examination] in no way addressed the primary reason set forth in my application for [benefits]. I am a laryngectomee and wish[ ] to emphasize the fact that the condition which eventually led to the removal of my voice box in 1977 began when I suffered malnutrition [as a POW]." R. at 333–34. He also filed a Notice of Disagreement (NOD) as to the denial of his larynx-condition claim, asserting in that NOD, inter alia, that "VA completely failed to address the primary reason set forth in

my application for benefits." R. at 336. In April 1983, the RO granted service connection for malnutrition (based on a presumption created by the Former Prisoner of War Benefits Act of 1981, Pub.L. No. 97–37, 95 Stat. 935 (Aug. 14, 1981)) and continued the denial of service connection for his larynx condition. R. at 473–74.

Following a Board remand of his larynx-condition claim, VA, in June 1985, requested from the Armed Forces Institute of Pathology (AFIP) "an opinion as to the time of onset or probable duration of the malignancy or malignancies in question." R. at 581. In a July 1985 response, Dr. E.M. Travers stated: "From our investigation of the information in Mr. Livesay's claims folder[,] we would estimate that his laryngeal malignancy had its origin within two years of the positive biopsy material from the larynx obtained in October 1966." R. at 585. In December 1985, the Board denied the appellant's claim (R. at 609–20), and, in November 1987, the Board denied reconsideration of the 1985 BVA decision (R. at 688–97).

In March 1993, the appellant submitted to the RO a letter asserting that his larynx condition was the result of the malnutrition that he had experienced as a POW. R. at 772–79. He also stated that he had been hospitalized at a VA facility several times during the two years following his discharge from service and that "[t]o my knowledge I did not undergo any throat examination at any time while at the VA facility." R. at 773. He further asserted that the VA medical examination conducted in 1982 had been "poorly conducted." R. at 774. The RO responded that the prior Board decision was final and that he could submit new and material evidence if he wished to have his disallowed claim reopened. R. at 782.

After receiving further correspondence from the appellant, including a January 2, 1997, letter regarding his attempts to obtain benefits based on his POW experience, the RO notified the appellant that his claim would be processed as a claim for service connection secondary to smoking. R. at 826, 828. Following receipt of additional information from him regarding his smoking history, VA conducted a POW protocol examination in December 1997. R. at 845, 849–53. In the December 1997 report of that examination, the examiner opined:

The etiology of cancer of the larynx is likely to be moderated by his severe malnutrition and starvation while in the service. He did smoke also in the service and in the VA hospitals soon after that. It is more likely than not that these two factors, malnutrition, causing decreased immunity, and smoking in the service were the positive agents for his laryngeal cancer.

R. at 852. In March 1998, the RO awarded the appellant service connection for cancer of the larynx, status post laryngectomy, and assigned a 100% disability rating, effective January 2, 1997. R. at 871. In response, he filed an NOD, in which he argued that the effective date of the award should be the date of his 1982 application for service connection because "the condition I have today is no different from what it was in 1982." R. at 878. After the RO issued a Statement of the Case (R. at 881–96), the appellant, in June 1998, submitted a VA Form 9, Appeal to the Board of Veterans' Appeals (Form 9), in which he asserted that he had filed his claim in 1982 and that he had "always kept it open." R. at 903.

In December 1999, the Board issued the decisions here on appeal. In Decision 1, the Board concluded that the December 1985 and November 1987 BVA decisions "are final" (R. at 21) and noted that "the effective date for a grant of service connection after a final disallowance shall be fixed in accordance with facts found, but shall not be earlier than the date of receipt of application therefor" (R. at 24). The Board found that "it is clear that [the appellant's] 'entitlement arose' in the 1960s, when he was diagnosed with laryngeal cancer," and stated that "[t]he main question, therefore, involves the date of receipt of the [appellant's] claim for service connection." R. at 23 (emphasis added). The Board then concluded that the award of service connection had been predicated on a claim to reopen that was received in January 1997 and that the appellant therefore was not entitled to an effective date prior to January 1997. R. at 25. In Decision 2, the Board denied the appellant's CUE claims as to the 1985 and 1987 Board decisions. R. at 12.

## II. ANALYSIS

### A. Reversal

In *Hayre v. West*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit), in addressing Mr. Hayre's argument that he was entitled to an earlier effective date because the RO in a prior (1972) adjudication stream had violated the duty to assist, held that "[a] breach of the duty to assist in which the VA failed to obtain pertinent [service medical records (SMRs)] specifically requested by the claimant and failed to provide the claimant with notice explaining the deficiency" would constitute a "grave procedural error" that would "vitiate[ ] the finality of an RO decision." *Hayre*, 188 F.3d 1327, 1330–33 (Fed.Cir.1999). For the reasons set forth below, the Court should hold that the appellant in this case has established that VA's failure to obtain, in connection with his 1982 claim for service connection, a medical opinion as to the etiology of his

larynx condition, constitutes a "grave procedural error" as defined by the Federal Circuit in *Hayre*, and that the appellant is thereby entitled to a 1982 effective date.

Initially, it is notable that, on numerous occasions prior to the March 1998 RO decision (which assigned the January 1997 effective date), the appellant asserted that VA had failed to afford him an appropriate medical examination with regard to his 1982 claim. *See, e.g.,* R. at 304, 333, 774. In response to the March 1998 RO decision, the appellant filed an NOD, in which he stated that he was entitled to a 1982 effective date because his condition was the same in 1982 as it was in 1998. He further asserted in his June 1998 Form 9 which was filed within one year after the RO's decision (*see* 38 U.S.C. § 7105(b)(1)) that his "claim was filed in 1982" and that he had "always kept it open." R. at 903. Because this Court has jurisdiction over all issues that are "appropriately identified [from] the radix of his [NOD]," *Collaro v. West,* 136 F.3d 1304, 1310 (Fed.Cir.1998), the Court should preliminarily conclude that the appellant has filed an NOD that confers jurisdiction over his assertion of *Hayre* grave procedural error. *Cf. Hayre v. Principi,* 15 Vet.App. 48, 51–52 (2001) (noting that "finality of the 1972 adjudication was never an issue which was raised before the BVA or this Court"; and holding that 1993 NOD as to a claim that "in no way ... purported to challenge the 'issue of the finality' of the 1972 adjudication" did not confer jurisdiction over asserted grave procedural error).

As to the merits of the appellant's assertion of a *Hayre* error, the regulations extant in 1982 provided:

> *Prisoners of War.* Where disability compensation is claimed by a former prisoner of war, omission of history or findings from clinical records made upon repatriation is not determinative of service connection, particularly if evidence of comrades in support of the incurrence of the disability during confinement is available. Special attention will be given to any disability first reported after discharge, especially if poorly defined and not obviously of intercurrent origin. *The circumstances attendant upon the individual veteran's confinement and the duration thereof will be associated with pertinent medical principles in determining whether disability manifested subsequent to service is etiologically related to the prisoner of war experience.*

38 C.F.R. § 3.304(e) (1981) (latter emphasis added). Because the appellant claimed that his larynx condition was related to the malnutrition that he experienced as a POW and because, under § 3.304(e), VA was required to consider whether that claimed disability was "etiologically related" to his POW experience, it was incumbent upon VA to obtain, prior to its adjudication of his 1982 claim, a medical opinion addressing whether the appellant's larynx condition was etiologically related to his POW experience. *See Hayre,* 188 F.3d at 1331 (finding that "VA's obligation to assist claimants ... had existed in 38 C.F.R. § 3.103(a) since July 18, 1972"); *Colvin v. Derwinski,* 1 Vet.App. 171, 175 (1991) (in reaching medical conclusions, Board may consider only independent medical evidence, rather than relying on its own medical conclusions, to support its findings). At the time that the Board denied his 1982 claim (R. at 609, 688), there was no medical evidence regarding the etiology of his claimed disability. *See infra* Part II.B. Moreover, despite the appellant's specific request for an etiology opinion and his numerous statements that such an opinion had not yet been provided, and despite the special emphasis that Congress had placed on VA's assisting former POWs, given "the problems encountered by for-

mer [POWs] in their efforts to prove service connection for disabilities attributable to the conditions of their captivity and imprisonment," H.R.Rep. No. 97–28, at 5 (1981), *reprinted in* 1981 U.S.C.C.A.N. 1410, 1412, neither the RO nor the Board ever notified him that such an examination would not be provided by VA. *See also* 127 Cong. Rec. 11,420, 11,423 (1981) (statement of Sen. Simpson: "Over the years, these former [POWs] have reported that their claims for compensation have often been unfairly denied by [VA] due to lack of solid medical evidence."); S.Rep. No. 95–1054 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3465, 3493 ("conditions which may have seemed relatively minor at the time of repatriation may have become progressively debilitating[, and t]hus, thirty years later, a former POW suffering from a debilitating disease that may well have resulted from his ... internment, may encounter extreme difficulty in proving service connection"); H.R.Rep. No. 91–1166, at 5 (1970), *reprinted in* 1970 U.S.C.C.A.N. 3723, 3727 ("Because of the conditions of their captivity and the kinds of long-range harm that may have been caused, it is sometimes difficult for a former [POW] to establish, some time after the completion of his military service, that a disability ... is related to his military service."). To the contrary, on the same form on which the appellant had stated that he was requesting a VA examination for the "sole purpose" of establishing a causal link between his POW experience and his larynx condition, the RO notified him that "Your medical exam[ination] will be accomplished in appropriate clinic[s] at this [VA] facility" and that he should "NOT" take that form to a private physician. R. at 308. Furthermore, when the appellant was eventually provided with an etiology opinion, nearly 15 years later, the examiner determined that there was a causal relationship between the malnutrition he experienced in service and his larynx condition (R. at 852), and the appellant was shortly thereafter awarded service connection (R. at 871).

Under these circumstances, the Court should hold that VA's error in failing to obtain an etiology opinion before adjudicating the appellant's 1982 claim constituted a "grave procedural error" within the meaning of *Hayre*, thereby rendering nonfinal the 1985 and 1987 BVA decisions that denied that 1982 claim. We should thus reverse the BVA's determination in the decision on appeal (Decision 1) that the 1985 and 1987 BVA decisions were final. Moreover, considering that the Board has already determined that " 'entitlement arose' in the 1960s, when [the appellant] was diagnosed with laryngeal cancer" (R. at 23), we should also hold that the appellant is entitled to a 1982 effective date based on the date of his 1982 claim. *See* 38 U.S.C. § 5110(a) ("Unless specifically provided otherwise in this chapter, the effective date of an award based on an original claim[ or] a claim reopened after final adjudication ... shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor."); *Hazan v. Gober,* 10 Vet. App. 511, 520 (1997) (for effective date purposes, "the application ... must be an application on the basis of which the [benefits were] awarded"); 38 C.F.R. § 3.400 (2000); *cf. Lalonde v. West,* 12 Vet.App. 377, 381 (1999) (date of application that resulted in final denial could not serve as basis for effective date of subsequent award of service connection). Such a result would seem compelled on this record by the repeated injunctions from the Federal Circuit that we must always bear in mind the pro-claimant nature and purpose of the VA adjudication system. *See, e.g., Elkins v. Gober,* 229 F.3d 1369, 1376 (Fed.

Cir.2000); *Nolen v. Gober*, 222 F.3d 1356, 1361 (Fed.Cir.2000); *Hensley v. West*, 212 F.3d 1255, 1262 (Fed.Cir.2000); *Hayre*, 188 F.3d at 1333–34; *Glover v. West*, 185 F.3d 1328, 1332 (Fed.Cir.1999), *cert. denied*, 529 U.S. 1108, 120 S.Ct. 1960, 146 L.Ed.2d 792 (2000); *Hodge v. West*, 155 F.3d 1356, 1362 (Fed.Cir.1998).

### B. Majority's *Hayre* Analysis

As to the majority's analysis of the appellant's assertion of *Hayre* grave procedural error, initially we note that the majority (in its discussion as to Decision 1) states that that assertion was raised for the first time on appeal to this Court and that the Court thus "declines to consider this argument at this time." *Ante* at 173. The majority notes that "[t]he appellant is free to proffer his arguments to the Board on remand, for consideration by the agency in the first instance." *Id.* However, in its discussion as to Decision 2, the majority then holds that, with respect to the appellant's 1982 claim, VA was not required to provide him with "an opinion as to etiology" and that, if VA was required to provide an etiological opinion, "the appellant . . . has not demonstrated that the examination was . . . inadequate." *Ante* at 176. The majority's conclusions on these issues effectively decide that no *Hayre* grave procedural error exists here. Thus, even though the majority takes the position that the appellant has not yet raised to VA a contention of *Hayre* error, the majority has already made a decision adverse to the appellant with respect to that contention, thereby eliminating the appellant's ability to succeed as to such error before VA, despite the majority's "free to proffer" invitation to the contrary. *See* 38 U.S.C. §§ 511(a), 7104; *see also Allen v. Principi*, 237 F.3d 1368, 1372–74 (Fed.Cir.2001) (holding that, although Federal Circuit generally does not have jurisdiction to review remand by this Court, Federal Circuit has jurisdiction where this Court's

decision would effectively foreclose Board from considering issue and that issue might evade review by Federal Circuit); *In re Fee Agreement of Smith*, 10 Vet.App. 311, 314 (1997) (Court decision was "law of the case"; Board on remand was not free to do anything contrary to that decision).

Moreover, as discussed above, we disagree with the majority's determination that in 1982 there was no requirement for VA to afford the appellant an etiological opinion. Admittedly, the pertinent language of 38 C.F.R. § 3.304(e) (1981) could be read as expressed in terms of adjudicatory requirements, rather than evidentiary-development requirements. *Id.* ("The circumstances attendant upon the individual veteran's confinement and the duration thereof will be associated with pertinent medical principles in determining whether disability manifested subsequent to service is etiologically related to the prisoner of war experience."). However, that regulation required VA to render a medical conclusion as to whether a "disability manifested subsequent to service is etiologically related to the [POW] experience," 38 C.F.R. § 3.304(e) (1981), and the Board must support its medical conclusions with medical evidence, not its own medical conclusion, *see Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Colvin, supra.* Consequently, in order to fulfill its adjudicatory responsibilities under that regulation, VA was required, before it adjudicated the 1982 former-POW claim, to obtain a medical opinion addressing whether there was a causal relationship between the POW experience and the claimed condition. *See* H.R.Rep. No. 91–1166 (1970), *reprinted in* U.S.C.C.A.N. 3723, 3728 (Explanation of the Bill; "The Committee is highly sympathetic with the problems of former [POWs] and wishes to stress its desire that [VA] administer this provision of law [Pub.L.

No. 91–376, § 3, 84 Stat. 787, 788–89 (1970) (adding 38 U.S.C. § 1112(b) former-POW presumption)], as well as all existing laws and regulations on the subject, in the most liberal fashion possible"); S.Rep. No. 91–784, at 4 (1970), U.S.Code Cong. & Admin.News 1970, pp. 3723, 3735 (quoting testimony of VA Chief Benefits Director: "Our regulations also attempt to treat former [POWs] liberally. Physical examinations are particularly thorough, searching for disabilities common to prisoners of war even when they are not complained of . . .").

As to the majority's conclusion that VA "appears to have fulfilled any duty [it] may have had [to obtain an etiology opinion] with respect to [the appellant's] 1982 claim," *ante* at 176, we note that the medical evidence upon which the majority relies in reaching that conclusion (R. at 312–25, 580–81) does not contain any opinion as to the etiology of the appellant's larynx condition. Rather, that AFIP opinion addresses only the date of onset of his larynx condition—that is, it provides evidence only as to the time frame for the manifestation of the cancer, not as to the causative factors for that cancer. *See* R. at 312 (examiner noted that appellant had undergone laryngectomy in 1977), 585 (AFIP's Dr. Travers opined that appellant's "laryngeal malignancy had its origin within two years of the positive biopsy material from the larynx obtained in October 1966"). Indeed, the AFIP was specifically requested to opine only as to the "time of onset or probable duration of the malignancy or malignancies in question." R. at 581. Moreover, in his report, Dr. Travers did not mention or address the appellant's POW experience or the malnutrition that he experienced as a POW. *See* R. at 584–85. This medical evidence, which clearly does not address whether there was a causal relationship between the appellant's POW experience (including his service-con-nected malnutrition) and his larynx condition, cannot be considered to have fulfilled an obligation to this former POW to obtain an etiology opinion. The point here is not what such an opinion would have concluded in 1982 but whether it was a grave procedural error in violation of the applicable regulatory duty owed this former POW not to obtain such an opinion regardless of the outcome of the process—just as it was such an error in *Hayre* not to obtain the requested SMRs even though "Mr. Hayre cannot prove that [they] would manifestly change the outcome of the 1972[RO] decision." *Hayre,* 188 F.3d at 1327.

The majority also suggests that no *Hayre* error exists because an asserted breach of the duty to assist based on an inadequate medical examination cannot constitute "grave procedural error." *Ante* at 173 (citing *Cook v. Principi,* 258 F.3d 1311 (Fed.Cir.2001), for proposition that Federal Circuit "declin[ed] to extend *Hayre's* 'restricted ruling to cover an asserted breach of the duty [to assist] where [the appellant alleges that] the medical examination he received was inadequate'"). However, the asserted error in this case is not that VA provided an inadequate medical examination; rather, the asserted error is that VA failed to provide to a former POW a medical opinion addressing whether his larynx condition was etiologically related to his POW experience. Moreover, determining that such an opinion was not obtained (until 1997) requires an examination of only objective facts; it does not involve the type of subjective judgments that were involved in *Cook,* 258 F.3d at 1314–15 (Federal Circuit declined to extend *Hayre* to "significantly different" situation where appellant alleged that medical examination was inadequate because it "was not detailed or extensive enough"; and stated that determining

whether there had been grave procedural error in *Hayre* "dealt with wholly objective issues," whereas Cook's contention involved "almost entirely matters of judgment").

## C. VCAA

With regard to the VCAA, as noted at the outset, under the analysis set forth in Part II.A., *supra,* the appellant would receive a 1982 effective date, and there would thus be no need to address the appellant's other arguments or the possible impact of the VCAA on his claims. However, the majority reaches those issues and holds that "the VCAA is not applicable to the appellant's allegations of CUE in the 1985 and 1987 BVA decisions." *Ante* at 178.

We express our strong disagreement with the majority's VCAA analysis because we continue to believe that the Court should remand CUE claims in light of the VCAA and the Court's analysis in *Holliday v. Principi,* 14 Vet.App. 280, 286–90 (2001), *recons. denied,* 14 Vet.App. 327, 328–29 (2001). That is, the Secretary and not the Court should decide in the first instance the applicability of the VCAA to the appellant's claims. *See Holliday,* 14 Vet.App. at 290. Instead of remanding for the Secretary to make this determination initially, the majority, in essence, is creating here, without waiting for legally promulgated regulations, its own restrictive regulation, which provides that the VCAA does not apply to CUE claimants.

In concluding that "the VCAA is not applicable to the appellant's allegations of CUE," *ante* at 178, the majority relies primarily on (1) the organization of title 38, United States Code, in combination with the definition of "claimant" under VCAA § 2, and (2) regulations and caselaw regarding CUE claims. We find the majori-

ty's reasoning in both regards to be unpersuasive.

As to the organization of title 38, the majority concludes that "[a] litigant alleging CUE is not pursuing a claim for benefits pursuant to [parts II (General Benefits) and III (Readjustment and Related Benefits) of title 38, U.S.Code]"; that the term "claimant" as defined by section 2 of the VCAA includes only persons seeking benefits under parts II and III; and that the VCAA thus does not apply to CUE litigants. *Ante* at 178–79. It is significant to note, however, that the VCAA amends chapter 51 of part IV (General Administrative Provisions), which governs all "Claims, Effective Dates, and Payments." Had Congress wanted to restrict the duty-to-assist and notification provisions amended by the VCAA to apply only to parts II and III of title 38, it could have codified them in those parts, as opposed to the "General Administrative Provisions" part. Moreover, to hold, as the majority has done, that the provisions of the VCAA are not applicable to CUE claims leads to a particularly anomalous result considering that 38 U.S.C. § 5109A, which provides the statutory authority for CUE attacks against RO decisions, is itself contained in chapter 51. Thus, under the majority's construct, the VCAA provisions amending chapter 51 would not apply to another section contained in that same chapter.

Finally, 38 U.S.C. § 5100, as added to title 38 by the VCAA, provides: "For purposes of this chapter, the term 'claimant' means any individual applying for, or submitting a claim for, any benefit under the laws administered by the Secretary." VCAA § 2. There is nothing in that language that purports to limit the definition of "claimant" to an individual seeking a particular category of benefits and, indeed, the two CUE provisions themselves provide that a person who requests a CUE

determination is "the claimant." 38 U.S.C. §§ 5109A(c) ("Review to determine whether [CUE] exists in a case may be instituted by the Secretary on the Secretary's own motion or upon request of the claimant."), 7111(c) ("Review to determine whether [CUE] exists in a case may be instituted by the Board on the Board's own motion or upon request of the claimant.").

In this regard, it appears to us that the majority's construction of the term "claimant" is taking the Court on a journey similar to that which the Federal Circuit saw fit to terminate in *D'Amico v. West*, 209 F.3d 1322, 1327 (Fed.Cir.2000). *See Laruan v. West*, 11 Vet.App. 80 (1998) (en banc) (because appellant could not show veteran status, VA had no obligations to him), *overruled by D'Amico, supra; Sarmiento v. Brown*, 7 Vet.App. 80, 83–84 (1994) (holding that, because service department was unable to verify service that would make individual seeking benefits a veteran eligible for VA benefits, he "never attain[ed] the status of claimant" and therefore duty to reopen under 38 U.S.C. § 5108 was never triggered), *overruled by D'Amico, supra;* H.R.Rep. No. 106–781, at 9 (2000), U.S.Code Cong. & Admin.News 2000, pp. 2006, 2011–12 (stating that purpose of defining "claimant" in new section 38 U.S.C. § 5100 is to ensure that Secretary will provide duties to persons whose status as veteran is not yet determined); *see also D'Amico v. West*, 12 Vet.App. 357, 357–62 (1999) (en banc order) (Steinberg and Kramer, JJ., dissenting from denial of en banc decision); *Laruan*, 11 Vet.App. at 86–91 (Kramer and Steinberg, JJ., concurring in part and dissenting in part); *Sarmiento*, 7 Vet.App. at 86–89 (Kramer, J., concurring in the result) (discussing *Glynn v. Brown*, 6 Vet.App. 523 (1994), *McGinnis v. Brown*, 4 Vet.App. 239 (1993), and *Aguilar v. Derwinski*, 2 Vet.App. 21 (1991)). Once again, a majority of this Court, despite the Federal Circuit's admonition to

the contrary, is attempting to create out of whole cloth a restricted definition of "claimant" that eliminates duties otherwise owed by the Secretary. *See D'Amico*, 209 F.3d at 1326 (noting that "[t]he *Laruan* court did not rely on any statutes or regulations to support its position").

As to the second basis for the majority's VCAA holding, the majority concludes that "[t]he regulations promulgated by the Secretary regarding claims of CUE in final BVA decisions," 38 C.F.R. §§ 20.1400–1411 (2000), and a Federal Circuit opinion dealing with those provisions, *Disabled American Veterans v. Gober*, 234 F.3d 682, 702–04 (Fed.Cir.2000), *cert. denied*, 532 U.S. 973, 121 S.Ct. 1605, 149 L.Ed.2d 471 (2001), support the conclusion that CUE claims are not claims for benefits. *Ante* at 179. However, contrary to the majority's contentions, these authorities do not state or imply that CUE claims are not "claims for benefits"; rather, they provide only that CUE claims are claims for benefits that do not generally require evidentiary development. *See* 38 C.F.R. § 20.1411(c) ("motion under this subpart is not an application for benefits *subject to any duty associated with 38 U.S.C. § 5103(a)*" (emphasis added)), (d) ("motion under this subpart is not a claim for benefits *subject to the requirements and duties associated with 38 U.S.C. § 5107(a)*" (emphasis added)); *see also Disabled American Veterans*, 234 F.3d at 704 (stating that pre-VCAA statutory provisions relating to submission of evidence (38 U.S.C. §§ 5103(a), 5107(a)) would not apply to CUE claim, which does not involve submission of new evidence). Moreover, in regard to that Federal Circuit opinion, the Federal Circuit stated that it would "only address those challenges that were briefed"; addressed challenges to the validity of 38 C.F.R. § 20.1411(c) and (d) under the pre-VCAA versions of 38 U.S.C. §§ 5103(a)

and 5107(a) but recognized that those provisions had been amended by the VCAA; and recognized that evidence that was constructively before VA must be added to the record when considering certain CUE claims. *Disabled American Veterans*, 234 F.3d at 688 n. 3, 696 & n. 6, 704 & nn. 11–12.

## III. CONCLUSION

Given the appellant's exemplary war record and incarceration as a POW, his advanced age and 100% disabling service-connected condition, the almost two decade duration of his claim, and the pro-claimant nature and purpose of the VA adjudication system, it would not be surprising if, upon appeal to the Federal Circuit, that court expeditiously would reverse the majority opinion with a direction to award the benefits the appellant seeks. *See* FED. R.APP. P. 2 ("On … a party's motion, a court of appeals may—to expedite its decision or for other good cause—suspend any provision of these rules ….").