James R. COOK, Claimant–Appellant,

v.

Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent–Appellee.

No. 00–7171.

United States Court of Appeals, Federal Circuit.

July 20, 2001.

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, KS, argued for claimant-appellant.

Brian S. Smith, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were David M. Cohen, Director, and Deborah A. Bynum, Assistant Director.

Before MAYER, Chief Judge, FRIEDMAN, Senior Circuit Judge, and RADER, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This appeal challenges the decision of the United States Court of Appeals for Veterans Claims (Veterans Court) upholding the ruling of the Board of Veterans' Appeals that the 1952 alleged failure of the Veterans Administration Regional Office to give the veteran a proper medical examination before denying his claim for service connected benefits in 1952 did not violate the Secretary's duty to assist the veteran in developing the facts under 38 U.S.C. § 5107(a) and therefore did not make the Regional Office's decision non-final. We affirm.

I

The basic facts are undisputed. The appellant Cook served in the United States Army from August 1942 to December 1945. His service medical records contain a March 1945 diagnosis of "psychoneurosis, anxiety type." When Cook was recalled for service in 1950, an examination found that he was "not qualified for active duty due to his ulcer."

In 1952 Cook submitted to a Veterans Administration Regional Office a benefits claim for service connection for "Stomach Trouble–Nervous Stomach." A physical examination revealed a duodenal ulcer. In a neuropsychiatric examination the physician noted:

The present day idea is, generally, that a peptic ulcer may be a visceral expression of long continued anxiety. In this case, a diagnosis of duodenal ulcer has been established. A dual diagnosis should not be made, but it should be clear that the diagnosis of duodenal ulcer includes a psychic or emotional component.

In June 1952 the Regional Office denied service connection for "stomach trouble and nervousness." It stated that the ulcer was not incurred or aggravated in service and that the most recent examination had not revealed nervousness. The Regional Office "also stated that the '[neuropsychiatric] examination revealed no evidence of a psychiatric disability.' "

Cook did not appeal the Regional Office's decision to the Board of Veterans

Appeal (Board), and it therefore became final. *See* 38 U.S.C. § 7105(c).

In July 1989 Cook sought reopening of his claims. The Board did so and again denied service connection for them, but the Veterans Court reversed and directed the Board to determine Cook's "rating" (percentage of disability) for both his nervous disorder and his ulcer. *Cook v. Brown,* 4 Vet.App. 231, 238 (1993). The Regional Office awarded Cook a thirty percent rating for his anxiety disorder and a zero percent rating for his duodenal ulcer. The Regional Office made the awards effective July 1989 (the date on which Cook had sought reopening of his claims).

Cook appealed the Regional Office's decision, contending that the effective date of the award should have been the April 1952 date of the original filing of his claim and that the Regional Office's 1952 decision contained clear and unmistakable error and therefore was non-final.

In a single-judge non-precedential decision, the Veterans Court affirmed. The court first held that the alleged deficiencies in the Regional Office's 1952 decision did not constitute clear and unmistakable error. The court then rejected Cook's argument that the Regional Office's failure to give him an adequate medical examination violated its duty to assist him and therefore made the 1952 decision not final, and that the effective date of his benefits therefore should have been the date of that decision.

## II

The sole question Cook raises before this court is whether the Board erred in setting the effective date of the benefits it awarded as July 27, 1989, the date on which he first sought to reopen his claim. He contends that the effective date should have been the date in 1952 on which he originally applied for benefits.

Since the 1952 Regional Office decision was final when Cook sought to reopen his claim in 1989, the Regional Office made the benefits it awarded effective as of the date in which Cook sought reopening. This was in accord with 38 U.S.C. § 5110(a), which generally prohibits "the effective date of an award based on ... a claim reopened after final adjudication [to be set] earlier than the date of receipt of application therefor." The Regional Office's effective date was also in accord with the Department's regulation that mandated the effective date "will be the date of receipt of the claim or the date entitlement arose, whichever is the later." 38 C.F.R. § 3.400.

Cook's theory apparently is that if the 1952 decision is not final, the benefits should be retroactive to the 1952 date of filing the original benefits because that earlier date was "the date of receipt of application therefor" under § 5110(a). Or, perhaps, Cook is relying on 38 U.S.C. § 5109A(b), which provides that the "reversal or revision of a prior decision on the grounds of clear and unmistakable error has the same effect as if the decision had been made on the date of the prior decision." 38 U.S.C. § 5109A(b) (Supp. IV 1998). In any event, we reject his claim of non-finality.

## III

Under 38 U.S.C. § 7105(c), if a veteran fails to appeal from a Regional Office decision, that decision is "final." There are two statutory exceptions to this finality: (1) The Secretary must reopen a claim "[i]f new and material evidence [regarding the

claim] is presented or secured," 38 U.S.C. § 5108, and (2) a decision "is subject to revision [for] clear and unmistakable error," 38 U.S.C. § 5109A(a) (Supp. IV 1998).

In *Hayre v. West,* 188 F.3d 1327 (Fed. Cir.1999), this court created a third exception to the finality rule: an earlier decision is non-final if it involves a breach of the Regional Office's duty under 38 U.S.C. § 5107(a) to "assist" a claimant "in developing the facts pertinent to the claim." Cook argues that his case comes within this exception, because the Regional Office's failure to give him an adequate medical examination violated its duty to assist.

■ In *Hayre,* the veteran filed a disability claim for a "nerve problem." 188 F.3d at 1329. He stated that while in service he had been treated for "nerves" and had "talked to [a] psychiatrist," and requested the Regional Office to obtain his service medical records. *Id.* The Regional Office made such a request but did not receive the records. It did not request them again or inform the veteran of these facts.

This court held that in those particular circumstances, the Regional Office had breached its duty to assist. It "h[e]ld that a single request for pertinent SMRs specifically requested by the claimant and not obtained by the RO does not fulfill the duty to assist," *id.* at 1332, and stated that "inherent in the duty to assist is a requirement for the Secretary to notify the claimant if the VA is unable to obtain pertinent SMRs specifically requested by the veteran so that the claimant may know the basis for the denial of his or her claim; may independently attempt to obtain the SMRs; may submit alternative evidence and/or timely appeal," *id.* Noting that the

Veterans Court "has consistently held that," *id.* at 1333, "[i]n cases of grave procedural error ... RO or Board decisions are not final for purposes of direct appeal," *id.,* the court stated:

> We therefore hold that where there is a breach of the duty to assist in which the VA failed to obtain pertinent SMRs specifically requested by the claimant and failed to provide the claimant with notice explaining the deficiency, the claim does not become final for purposes of appeal.

*Id.* at 1334.

*Hayre* was an extremely narrow decision. Although the opinion contained some broad language, the holding was limited: the Regional Office decision was not final where the Regional Office breached its duty to assist when it "failed to obtain pertinent SMRs specifically requested by the claimant and failed to provide the claimant with notice explaining the deficiency." Cook seeks to extend this restricted ruling to cover an asserted breach of the duty where the medical examination he received was allegedly inadequate. We decline to extend *Hayre* to the significantly different circumstances of the present case.

*Hayre* dealt with wholly objective issues: did the veteran request the Regional Office to obtain his service records, did the Regional Office make a second request after the first was not satisfied, and did it tell the veteran what had happened? Those questions could be answered on the basis of undisputed objective facts and did not require any exercise of judgment.

In the present case, in contrast, the inquiry involves almost entirely matters of judgment. The record shows that in 1952 the Regional Office gave Cook both a medical and a neuropsychiatric examination.

Cook's objection is that the Regional Office failed to give him "a psychoneurosis examination" which, he contends, the government regulations at that time required. Cook's apparent contention is the neuropsychiatric examination he underwent was not detailed or extensive enough in view of his medical condition.

Whether, in light of the medical problems Cook asserted he had and the conditions disclosed by the two examinations made, a further medical examination should have been made, was a matter calling for the exercise of expert medical judgment. The inquiry upon which Cook would have us embark is open ended and far reaching. For example, would the Regional Office violate its duty to assist if, when a veteran complained about back or leg pains, it gave him a thorough physical examination conducted by an experienced internist, but did not also have an orthopedist examine him? Could an otherwise proper medical examination be challenged because the physician conducting it failed to make a particular test that, many years later, the veteran contends should have been made? Many of such questions would be almost impossible to answer satisfactorily thirty or forty years after the examination, at a time when the physicians who conducted the examination were no longer alive or available for consultation.

In *Hayre*, the court also stated:

The duty to assist does not end upon the RO's submission of requests for records. Where the record does not adequately reveal the current state of a veteran's disability and the claim is well-grounded, fulfillment of the statutory duty to assist requires a thorough and contemporaneous medical examination.

188 F.3d at 1332.

This statement is dictum. *Hayre* did not decide any issue involving the Regional Office's obligation to give the veteran a medical examination or the contents of an adequate one. It decided only that the Regional Office's failure to follow up on its request for the veteran's service medical records and to inform him of what had happened rendered the Regional Office's denial of the benefits claim non-final. The statement sheds no light on the proper disposition of the question before us.

In sum, *Hayre* does not establish that the Regional Office's failure to give Cook an additional medical examination in 1952 violated its duty to assist and rendered its 1952 decision non-final.

Contrary to Cook's contention, the Veterans Court properly placed the burden on him to support his claim that in 1952 the Regional Office was required to conduct such an examination. Since *Hayre* does not support that claim, it was incumbent on Cook to make that showing to support his alleged entitlement to benefits effective as of 1952. *Cf. Bustos v. West,* 179 F.3d 1378, 1381 (Fed.Cir.1999) (a veteran "must show that an outcome-determinative error occurred" to reopen a final Regional Office rating decision because a clear and unmistakable error occurred); *Hodge v. West,* 155 F.3d 1356, 1357 (Fed. Cir.1998) (examining "the legal test [to determine] whether [a veteran's] proffered evidence is sufficiently 'new and material' such that a veteran's claim for service-connected disability benefits must be reopened").

IV

██ Cook contends, however, that instead of deciding this issue itself, the Veterans Court should have remanded to the Department for it initially to adjudicate the question. The Board had not ad-

dressed the *Hayre* issue, since this court decided *Hayre* after the Board had decided Cook's case.

Cook relies upon 38 U.S.C. § 511(a), which states that "[t]he Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans." That provision, however, merely describes the broad authority of the Secretary to administer the laws governing "the provision of benefits to veterans." It does not address the division of authority between the Secretary and the Veterans Court, or purport to limit in any way the authority of the latter.

The authority of the Veterans Court "to review decisions of the Board of Veterans' Appeals," 38 U.S.C. § 7252(a), is described in 38 U.S.C. § 7261, which requires that court "to the extent necessary" to "(1) decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an action of the Secretary; (2) compel action of the Secretary unlawfully withheld or unreasonably delayed; (3) hold unlawful and set aside decisions, findings (other than those described in clause (4) of this subsection), conclusions, rules, and regulations issued or adopted by the Secretary, the Board of Veterans' Appeals, or the Chairman of the Board." 38 U.S.C. § 7261. Nothing in this language supports, or even suggests, the limitation that Cook would place upon the authority of the Veterans Court in this case.

Moreover, the authority of the Veterans Court to decide this issue initially is supported by an important jurisprudential consideration. The exception to the statutory rule of finality of unappealed Regional Office decisions based upon a breach of the duty to assist is a judicially-created doctrine announced in *Hayre*. As such, it is appropriate and proper for the courts to define the parameters of the doctrine. That task is not one that invokes the expertise or discretion of the Secretary.

## CONCLUSION

The judgment of the Court of Appeals for Veterans Claims is

*AFFIRMED.*

Opinion for the court filed by Senior Judge FRIEDMAN, in which Judge RADER joins. Dissenting opinion filed by Chief Judge MAYER.

MAYER, Chief Judge dissenting.

In my view, a breach of the duty to assist the veteran by failing to provide a proper medical examination vitiates the prior decision of the Regional Office for the purpose of direct appeal. A duty to assist is an integral part of the claimant friendly, non-adversarial claims adjudication process of the Department of Veterans Affairs (VA). A breach of this critical duty compels us to create a judicial remedy tolling the finality of VA decisions for the purpose of appeal. *Hayre v. West,* 188 F.3d 1327 (Fed.Cir.1999). This ensures that the VA's duty to assist claimants does not become a hollow slogan. *Id.*

Congress expressly stated that the VA must "fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits." H.R.Rep. No. 100–963 at 13, *reprinted in* 1988 U.S.C.C.A.N. 5782, 5795. In *Hayre,* we concluded that the VA breached its duty to assist when it failed to inform the veteran that it was unable to obtain pertinent service medical records the veteran had re-

quested. 188 F.3d at 1334. But the VA's duty to assist is not limited to obtaining medical or other government maintained records; it includes providing a thorough medical examination when necessary to develop the veteran's claim. *Id.* at 1332.

*Hayre* described the specific actions of the VA as a "grave procedural error" that required tolling the finality of the Regional Office's decision. *Id.* at 1333. It was not, however, limited to only grave procedural errors. The results of a veteran's medical examination are often the determinative factor in the claim adjudication process. An insufficient examination may serve to breach the VA's duty to assist the veteran in fully developing his claim. Therefore, administering an improper medical exam has as important an effect on the proper resolution of a veteran's claim as a failure to inform .the veteran that the VA was unable to obtain medical records. A veteran must rely upon the VA for a thorough medical examination just as he must rely upon the department to locate service medical records. Just as he must be able to assume, absent notice to the contrary, that the VA located and based its claim determination on the requested medical records, the veteran should be able to assume that the VA performed a thorough medical examination.

I would reverse the judgment of the Court of Appeals for Veterans Affairs.