Citation Nr: 1533652 
Decision Date: 08/06/15 Archive Date: 08/20/15

DOCKET NO. 12-02 862 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUES

1. Entitlement to service connection for left ear hearing loss.

2. Entitlement to service connection for vertigo.


REPRESENTATION

Appellant represented by: Oklahoma Department of Veterans Affairs


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

L. Crohe, Counsel
INTRODUCTION

The Veteran served on active duty from July 1968 to May 1974 with subsequent service in the United States Air Force Reserves. 

This matter comes before the Board of Veterans' Appeals (Board) from an April 2011 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) located in Muskogee, Oklahoma, which denied service connection for vertigo, tinnitus, and bilateral hearing loss.

In July 2011, the Veteran testified before a Decision Review Officer (DRO) at a hearing at his local RO. The Veteran also testified before the undersigned Veterans Law Judge via video conference in June 2012. Transcripts of both hearings are associated with Veteran's electronic claims file. 

In May 2014, the Board granted service connection for tinnitus, denied service connection for right ear hearing loss, and remanded the remaining claims for further development. 


FINDINGS OF FACT

1. Left ear hearing loss is not attributable to service and did not first manifest within one year of separation from service.

2. Vertigo is attributable to service. 


CONCLUSION OF LAW

1. The criteria for left ear hearing loss have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113 (West 2042); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309, 3.385 (2014).

2. Vertigo was incurred in active service. 38 U.S.C.A. §§ 1101, 1110 (West 2014); 38 C.F.R. §§ 3.303, 3.304. 3.306 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify & Assist

VA has specified duties to notify a claimant as to the information and evidence necessary to substantiate a claim for VA benefits. The Board has considered whether further development and notice under the Veterans Claims Assistance Act of 2000 (VCAA) or other law should be undertaken. 

As the Board is granting service connection for vertigo, further development under the VCAA or other law would not result in a more favorable outcome or be of assistance to this inquiry.

In regards to the claims seeking service connection for left ear hearing loss, notice fulfilling the requirements of 38 C.F.R. § 3.159(b) was furnished to the Veteran in June 2010, prior to the issuance of the rating decision on appeal. The June 2010 letter also notified the Veteran of VA's practices in assigning disability evaluations and effective dates for those evaluations. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Thus, no other development is required with respect to the duty to notify. Additionally, the Veteran has not alleged any notice deficiency during the adjudication of the claim. Shinseki v. Sanders, 129 S. Ct. 1696 (2009).

VA also has a duty to assist the Veteran in obtaining potentially relevant records, and providing an examination or medical opinion when necessary to make a decision on the claim. Here, the Veteran's service treatment records (STRs), VA records, and identified private treatment records have been obtained and associated with the record. In May 2014, the Board remanded the claim for treatment records, new VA opinions, and readjudication. Subsequently, requested treatment records were associated with the claims file in August 2014, an adequate VA opinion was obtained in August 2014, and the issue was readjudicated in a February 2015 supplemental statement of the case. Hence, the AOJ substantially complied with all of the Board's remand instructions and VA has no further duty to attempt to obtain any additional records or obtain additional opinions with respect to the service-connection claims being decided herein. See Dyment v. West, 13 Vet. App. 141, 146- 47 (1999); Stegall v. West, 11 Vet. App. 268 (1998). The August 2014 VA opinion is found to be adequate, as the examiner reviewed the record and accurately reported the Veteran's history, along with all pertinent current findings, and provided a rationale. See Barr v. Nicholson, 21 Vet. App. 303 (2007).

The Veteran testified at RO and Board hearings. The hearings were adequate as the DRO and Veterans Law Judge who conducted the hearings explained the issues and identified possible sources of evidence that may have been overlooked. 38 C.F.R. 3.103(c)(2); Bryant v. Shinseki, 23 Vet. App. 488 (2010).

In summary, the Board finds that it is difficult to discern what additional guidance VA could have provided to the Veteran regarding what further evidence should be submitted to substantiate the claim. Conway v. Principi, 353 F.3d 1369 (Fed. Cir. 2004); see also Livesay v. Principi, 15 Vet. App. 165, 178 (2001) (en banc) (observing that "the VCAA is a reason to remand many, many claims, but it is not an excuse to remand all claims."); Reyes v. Brown, 7 Vet. App. 113, 116 (1994); Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991) (both observing circumstances as to when a remand would not result in any significant benefit to the Veteran).

II. Legal Criteria for Service Connection

Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. 

Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table); see also Hickson v. West, 12 Vet. App. 247, 253 (1999); 38 C.F.R. § 3.303.

In addition, sensorineural hearing loss will be presumed to have been incurred in or aggravated by service if it had become manifest to a degree of 10 percent or more within one year of a veteran's separation from service. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. 

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third Shedden/Caluza element for certain chronic disabilities listed in 38 C.F.R. § 3.309(a) (including arthritis, systemic lupus erythematosus, and scleroderma) is through a demonstration of continuity of symptomatology. See Clyburn v. West, 12 Vet. App. 296, 302 (1999). Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was "noted" during service; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. See Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2013); 38 C.F.R. §§ 3.303(b), 3.309(a).

In relevant part, 38 U.S.C.A. § 1154(a) (West 2002) requires that VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim for disability or death benefits. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

The United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) ("[T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence").

"Symptoms, not treatment, are the essence of any evidence of continuity of symptomatology." Wilson v. Derwinski, 2 Vet. App. 16, 19 (1991)). Once evidence is determined to be competent, the Board must determine whether such evidence is also credible. See Layno v. Brown, 6 Vet. App. 465, 469 (1994) (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted")).

Service connection may also be granted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

III. Analysis

A. Left Ear Hearing Loss

Hearing loss disability is defined by regulation. For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. 

Here, the STRs revealed that on the enlistment audiological evaluation in July 1968, puretone thresholds in the left ear were as follows:





HERTZ



500
1000
2000
3000
4000






LEFT
-5
-5
-5

-5

On accompanying Report of Medical History, the Veteran denied having ear, nose, or throat trouble as well as hearing loss. 

On November 1968, puretone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000






LEFT
-10
-10
-10
0
-5

Another January 1968 audiogram reflected puretone thresholds, in decibels in all frequencies of zero. Subsequent March 1971 and January 1972 evaluations also yielded normal findings.

On a March 1974 separation evaluation, puretone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000






LEFT
10
10
5
5
10

On accompanying Report of Medical History, the Veteran denied having ear, nose, or throat trouble as well as hearing loss. 

On a September 1975 evaluation, puretone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000






LEFT
5
0
0
N/A
5

Thus, the in-service audiological findings were within normal limits and the examination within one year of service was also within normal limits. 

Post-service, hearing loss within 38 C.F.R. § 3.385 was identified on a September 2010 audiological examination. During his examination, the Veteran reported that his hearing loss occurred during service from exposure to loud noises on the flight line without the use of hearing protection. After service, the Veteran related that he did not have exposure to loud noises occupationally, but did have recreational noise exposure from hunting and shooting; however, he claimed that he used ear protection during these activities. The examiner opined that it was less "likely as not that the Veteran's hearing loss was caused by military noise exposure as a French horn player and logistics plans and programs officer." The examiner noted that the Veteran's records indicated that there was not any evidence of hearing loss in the medical records.

The Veteran was examined in June 2011. The examiner indicated that the Veteran had normal hearing to 3000 Hertz in the left side, dropping to a mild to moderate sensorineural hearing loss with excellent speech discrimination scores. Further testing was recommended. In July 2011, the examiner indicated that the Veteran's hearing loss was probably noise-induced. 

The Veteran was afforded another VA audiological examination in August 2011. The examiner noted that the Veteran did not report a specific incident of acoustic trauma and that prolonged noise exposure could not result in complete profound loss of hearing (which he had in the right ear). The examiner indicated that noise exposure that occurs over a period of time affects the outer hair cells of the inner ear. The examiner explained that damage to the outer hair cells results in a maximum hearing loss of 65 to 70 decibels Therefore, the examiner concluded that the Veteran's profound hearing loss cannot be attributable to his report of noise exposure. The examiner further indicated that noise exposure affects hearing bilaterally and somewhat symmetrically. The examiner added that the Veteran had asymmetric hearing loss, which occurred following military service as his separation examination showed hearing within normal limits bilaterally at exit.

In the Board's prior remand, it was noted that the rationale provided by the August 2011 examiner related only to the complete, profound hearing loss in the right ear. However, there is no evidence showing complete, profound hearing loss in the left ear and, thus, there remained a question as to whether the Veteran's current left ear hearing loss is likely a result of his in-service noise exposure. 

In May 2012, a private audiologist's statement was received. This examiner noted that the Veteran had a mild to moderate left ear sensorineural hearing loss. The examiner opined that this hearing loss was at least as likely as not related to his military experience as a War Plans Team Member because he was exposed to excessive noise from jet engines, flight lines, and aircraft, which resulted in acoustic trauma. However, this examiner did not address any of the inservice audiological findings. 

Thus, an additional medical opinion was obtained in August 2014. The examiner reviewed the record and noted that the Veteran had normal hearing sensitivity at entrance and exit hearing examinations in both ears. Further, the examiner noted that there was no evidence in the record that the Veteran sustained noise injuries based on audiograms. The Board notes that while the Veteran was exposed to acoustic trauma, the audiograms nonetheless did not reflect hearing loss thereafter. The examiner opined that there was no basis to conclude that current hearing loss was causally related to military service. The examiner indicated that the Institute of Medicine (2006) reported that, based on current understanding of auditory physiology, hearing loss from noise injuries occurs immediately following exposure. The Institute of Medicine reportedly stated that there was no scientific basis to conclude that permanent hearing loss directly attributable to noise exposure will develop long after such noise exposure. Therefore, the examiner concluded that there was no scientific basis on which to conclude that the current hearing loss was caused by or the result of military service including due to noise exposure.

In determining the probative value to be assigned to a medical opinion, the Board must consider three factors: whether a medical expert was fully informed of the pertinent factual premises (i.e., medical history) of the case; whether the medical expert provided a fully articulated opinion; and whether the opinion is supported by a reasoned analysis. The most probative value of a medical opinion comes from its reasoning. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). Therefore, a medical opinion containing only data and conclusions is not entitled to any weight. In fact, a review of the claims file does not substitute for a lack of a reasoned analysis. See Nieves-Rodriguez; see also Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ( "[A] medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions."). 

In this case, the most complete opinion was provided in August 2014. The June 2011 opinion was non-specific regarding what noise exposure caused hearing loss, particularly since the Veteran admitted to post-service recreational noise exposure. The August 2011 opinion, as noted, did not fully address left ear hearing loss. The May 2012 opinion did not address the in-service findings. However, the August 2014 examiner had the benefit of the review of the entire medical history, provided a fully articulated opinion, and also furnished a reasoned analysis. This opinion is also supported by the September 2010VA examination report. The Board therefore attaches significant probative value to this opinion, and the most probative value in this case, as it is well reasoned, detailed, consistent with other evidence of record, and included an access to the accurate background of the Veteran. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000) (Factors for assessing the probative value of a medical opinion include the thoroughness and detail of the opinion).

The Board has considered the Veteran's own opinion that his hearing loss of the left ear is due to inservice noise exposure. However, as a lay person in the field of medicine, the Veteran does not have the training or expertise to render as probative an opinion on this issue, as this is a medical determination that is too complex to be made based on lay observation alone. See Jandreau v. Nicholson, 492 F. 3d 1372, 1376-77 (Fed. Cir. 2007) (observing that a layperson can be competent to identify conditions that are simple, such as a broken leg, but is not competent to identify more complex conditions such as a form of cancer); Barr v. Nicholson, 21 Vet. App. 303, 309 (2007) (holding that lay testimony is competent as to matters capable of lay observation, but not with respect to determinations that are "medical in nature"); Layno v. Brown, 6 Vet. App. 465, 469-71 (1994) (holding that in order for testimony to be probative of any fact, the witness must be competent to testify as to the facts under consideration, and that lay testimony is not competent to prove that which would require specialized knowledge, training, or medical expertise). Thus, the Veteran's opinion by itself cannot support his claim, and is outweighed by the findings to the contrary by the 2014 VA examiner, a medical professional who considered the pertinent evidence of record and found against such a relationship. See id.; see also King v. Shinseki, 700 F.3d 1339, 1345 (Fed. Cir. 2012) (affirming the Court's conclusion that the Board did not improperly discount the weight of a lay opinion in finding a medical expert's opinion more probative on the issue of medical causation).

Accordingly, since the most probative evidence establishes that left ear hearing loss is not etiologically related to service, service connection is not warranted on a direct basis. Moreover, as left ear hearing loss was not manifest to a compensable degree within the initial post-service year, service connection is also not warranted on a presumptive basis.

B. Vertigo

At the outset, in May 2014, the Board previously resolved that the Veteran did not clearly and unmistakably have preexisting vertigo when he entered service and was therefore sound when he entered service. 

In February 1973, the Veteran reported having vertigo for seven years. The onset was acute otitis media infections. There was no hearing loss or tinnitus. 

Post-service, in March 1978, the Veteran was see for complains of vertigo related to when he rotated his head. He reported that he had dizziness, which began in service. 

VA records documented intermittent dizziness thereafter. 

On a September 2010 audiological examination, the Veteran reported having vertigo since his exposure to loud noises during service on the flight line. The examiner opined that the vertigo was due to an unstated medical condition. When he was examined again in June 2011, the Veteran reported having constant vertigo. In July 2011, the examiner opined that the Veteran had probable labyrinthitis of an unknown etiology. 

The Veteran was afforded another VA audiological examination in August 2011. The examiner opined that the Veteran's separation examination noted that the Veteran had vertigo since childhood, which was suggestive of a genetic origin. However in the Board's prior remand, the Board noted that vertigo/dizziness was not noted on the Veteran's January 1968 enlistment examination and the evidentiary record did not contain clear and unmistakable evidence that vertigo/dizziness existed prior to service and as a result, the Veteran was presumed to have been in sound condition at entry into service. The Board also noted that the Veteran had consistently reported that he experienced his first dizzy spell during service in 1972, after which he sought treatment at the base clinic, and that he reported that, after being on light duty for a week, he continued with mild dizziness until spring 1974, with no other episodes until 1978. See June 2010 Veteran statement and June 2012 hearing transcript. 

In August 2014, a VA medical opinion was obtained from an audiologist. However, she indicated that it was not within the scope of practice of an audiologist to determine the etiology of dizziness. She nevertheless opined that there was no evidence to support the correlation between chronic vertigo and noise exposure. Since the audiologist qualified her opinion, additional clarification was sought. In a September 2014 opinion, the examiner stated that the Veteran had benign paroxysmal positional vertigo (BPPV). The examiner noted that the Veteran was initially seen during service for vertigo and was treated for three days. The examiner noted that it had recurred at infrequent intervals, even though the Veteran was away from the noise exposure. The examiner indicated that there was no evidence that loud noises caused vertigo. Rather, the examiner opined that the vertigo was related to labyrinthitis or inner ear dysfunction. The examiner stated that the vertigo was not aggravated during service, was due to unknown causes, but it did start during service. A January 2015 medical opinion reported that vertigo was not etiologically related to the Veteran's tinnitus.

There is no dispute in the medical opinions that the Veteran had initially had vertigo of the current type during service. Although the examiners indicated that the vertigo was not due to noise exposure and possibly of unknown etiology, the record demonstrates that initial incurrence was during service, regardless of the etiology. Thereafter, and as accepted by the examiners, the Veteran continued to intermittent have this type of vertigo which is currently present. Accordingly, service connection is warranted. 


ORDER

Service connection for left ear hearing loss is denied.

Service connection for vertigo is granted. 



____________________________________________
MARJORIE A. AUER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs